IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | | |
|---|---|---|
| ADAM ALLEY, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. |
| | ) | |
| v. | ) | |
| | ) | |
| FOLEY EQUIPMENT COMPANY, | ) | |
| | ) | REQUEST FOR JURY TRIAL |
| Defendant. | ) | |

SERVE: Registered Agent:
Ann Konecny
5701 East 87th Street
Kansas City, Missouri 64132

## PETITION FOR DAMAGES

COMES NOW Plaintiff Adam Alley, by and through under signed counsel, and for his claims against Defendant Foley Equipment Company ("Defendant"), states as follows:

1. Plaintiff Adam Alley ("Plaintiff") is a resident of Leeton, Johnson County, Missouri.

2. Defendant is a Kansas corporation with its principal place of business in Wichita, Kansas.

3. Defendant currently does business in Missouri and is properly registered to do so.

4. Defendant can be served through its Registered Agent, Ann Konecny, 5701 East 87th Street, Kansas City, Missouri 64132.

5. This case involves the intentional tort of discrimination and retaliation for exercising rights granted by the Worker's Compensation Law of Missouri, in violation of R.S.Mo. § 287.780, *et seq*.

1

6. Plaintiff accepted Defendant's offer of employment in Sedalia, Pettis County, Missouri.

7. Plaintiff worked at Defendant's construction equipment dealership, located at 1040 Sedalia Road, Sedalia, Pettis County, Missouri 65301 ("Defendant").

8. Plaintiff was injured and has invoked the Worker's Compensation Law of Missouri, R.S.Mo. Chapter 287.

9. Defendant communicated Plaintiff's termination to Plaintiff while he was at Defendant's facility in Sedalia, Pettis County, Missouri.

10. Defendant employs more than five people and is an "employer" within the meaning of the Missouri Worker's Compensation Law pursuant to § 287.030, R.S.Mo.

11. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332, because complete diversity exists amongst the parties and the amount in controversy exceeds $75,000.

12. Venue is proper in the Central Division of this Court pursuant to 28 U.S.C. § 1391(b)(2) and Local Rule 3.2(b)(1).

**DISCRIMINATION AND RETALIATION BASED ON THE EXERCISE OF WORKERS' COMPENSATION RIGHTS IN VIOLATION OF R.S.MO. § 287.780**

13. Plaintiff began working for Defendant's predecessor, Dean Machinery, in 1998.

14. Plaintiff was employed by Dean Machinery until Defendant purchased Dean Machinery in or about 2016.

15. Plaintiff remained at his position as a Resident Field Technician with Defendant.

16. Plaintiff was discharged from employment on March 16, 2018.

17. Plaintiff's assignments included troubleshooting and repairing heavy machinery and trucks.

18. As a Resident Field Technician, Plaintiff was also responsible for completing paperwork and billing incident to his assignments.

19. Plaintiff was supervised by Tyler Birch, the Field Service Manager for Defendant.

20. On February 27, 2018, Plaintiff reported to work, on-site, in Clinton, Henry County, Missouri.

21. Shortly after arriving on site, Plaintiff reached into the utility box attached to his truck to retrieve a "communication adapter."

22. A communication adapter is used to connect Plaintiff's laptop computer to various types of machinery for diagnostic, troubleshooting, and repair purposes.

23. The cables on the adapter were tangled and hung up on something in the utility box.

24. Upon forcibly pulling on the adapter in an attempt to free it from the utility box, Plaintiff felt a stabbing and searing pain in his left shoulder.

25. Plaintiff finished the work day in great shoulder pain.

26. The next day, on or about February 28, 2018, at the direction of Birch, Plaintiff reported to Defendant's Worker's Compensation doctor in Sedalia.

27. Plaintiff was provided paperwork that included an instruction that Plaintiff's work be restricted to light duty.

28. After the doctor's appointment, Plaintiff reported to work at Defendant's Sedalia location.

29. During the week of his injury and into the next, Plaintiff reported to work at Defendant's Sedalia location and worked within his restrictions.

30. On or about March 5th or 6th, Plaintiff was summoned to a meeting with Case Clough, the supervisor of Defendant's Sedalia and St. Joseph locations.

31. Plaintiff was provided a questionnaire regarding several issues including his workplace injury, timecard management, and billing hours submitted while working from home.

32. Plaintiff continued to work within restrictions throughout the week of March 5th, 2018.

33. On or about March 12, 2018, Plaintiff was summoned to a meeting with Birch and Aaron l/n/u, from Defendant's Kansas City location.

34. Aaron interrogated Plaintiff about why the GPS information regarding his truck location and timecard submissions did not match up.

35. Plaintiff described how Birch had an unwritten policy for purposes of customer retention and referrals whereby Birch, given certain circumstances, authorized Plaintiff to bill clients at the standard hourly rate instead of the after-hours premium rate.

36. Birch provided authorization by phone each time this customer retention practice was appropriate.

37. Birch did not deny that he authorized this practice in the meeting on March 12.

38. Aaron then interrogated Plaintiff about work hours submitted during times when GPS tracking had recorded Plaintiff's work truck at Plaintiff's residence.

39. Plaintiff explained that he often completed paperwork while at home.

40. Plaintiff also explained that he understood this practice to be in accordance with Defendant's policy with regard to the resident field technician position.

41. Plaintiff explained that it was his understanding that all resident field technicians completed their work and submitted their hours in this way.

42. Aaron then questioned Plaintiff regarding the workplace accident that caused the injury to his shoulder.

43. Plaintiff described how the injury occurred.

44. Despite the questioning about the unrelated billing and timecard submission concerns, Aaron explained to Plaintiff that the purpose of the investigation was to determine if there was potential for the same type of injury with the stated goal of reducing injuries.

45. At the end of the meeting, Plaintiff was directed to surrender his keys, laptop, company credit card, and all other Defendant-owned property.

46. Plaintiff was told that he was suspended until an investigation was completed.

47. On or about March 16, 2018, Plaintiff received a call from Defendant directing him to a meeting with Aaron and Birch at Defendant's Sedalia location at approximately 1:00 p.m.

48. At the meeting, Plaintiff was informed that he was discharged from his employment with Defendant.

49. Plaintiff was told that he was being discharged "due to findings" of the investigation.

50. Plaintiff asked about the specific nature of the findings of the investigation.

51. Plaintiff was told that the findings were with the human resources department.

52. Plaintiff was told that the results of the investigation would be included in a termination packet he would receive in the mail.

53. Plaintiff has never received information regarding any findings of the investigation.

54. Plaintiff received a letter reiterating that he had been "terminated" but never received information regarding the findings of the investigation for which he was allegedly terminated.

55. All actions or inactions of or by Defendant occurred by or through its agents, servants, or employees, acting within the course and scope of their employment, as set forth herein.

56. Plaintiff was an employee of Defendant.

57. Plaintiff was injured while in the course and scope of his employment with Defendant.

58. Plaintiff exercised rights granted by the Workers' Compensation Laws of Missouri, including, but not limited to, seeking medical care, work restrictions, convalescence, and time-off work benefits.

59. Defendant took adverse actions against Plaintiff, including his discharge from employment.

60. The motivating factor in these adverse actions taken by Defendant with respect to Plaintiff's employment was Plaintiff's exercise of his rights under the Workers' Compensation Laws of Missouri, including, but not limited to, seeking medical care, work restrictions, convalescence, and time-off work benefits.

61. Defendant's offered justifications for these adverse actions are false and/or pretextual.

62. The actions of Defendant, including Plaintiff's discharge from employment, were acts of retaliation, in violation of 287.780 R.S.Mo. which states as follows:

> No employer or agent shall discharge or discriminate against any employee for exercising any of his or her rights under this chapter when the exercising of such

rights is the motivating factor in the discharge or discrimination. Any employee who has been discharged or discriminated against in such manner shall have a civil action for damages against his or her employer.

63. The conduct of Defendant, as set forth above, was done with evil motive or in reckless disregard for the rights of Plaintiff.

64. As a direct and proximate result of Defendant's unlawful conduct, including wrongfully discharging Plaintiff's employment, Plaintiff has suffered irreparable injury, including past and future pecuniary issues, loss of employment opportunities, emotional pain, suffering, humiliation, inconvenience, mental anguish, and loss of enjoyment of life, and will continue to suffer the same unless and until this Court grants relief.

WHEREFORE, Plaintiff prays for judgment against Defendant for compensatory damages in an amount exceeding $75,000.00; for punitive damages; for Plaintiff's costs and expenses occurred herein; and for all other relief deemed just and proper by this Court.

## DEMAND FOR JURY TRIAL

Plaintiff requests a trial by jury all accounts and allegations of wrongful conduct alleged in this Complaint.

Respectfully submitted,

 */s/ Daniel L. Doyle*
Daniel L. Doyle, MO Bar No. 37305
Robert A. Bruce, MO Bar No. 69985
DOYLE & ASSOCIATES LLC
748 Ann Avenue
Kansas City, Kansas 66101
Telephone: (913) 371-1930, ext. 109
Facsimile: (913) 371-0147
d.doyle@ddoylelaw.com
r.bruce@ddoylelaw.com
ATTORNEYS FOR PLAINTIFF