# UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# CENTRAL DIVISION

| | |
|---|---|
| ADAM ALLEY<br><br>Plaintiff,<br><br>v.<br><br>FOLEY INDUSTRIES INC,<br><br>Defendant. | Case No. 2:20-cv-04054-NKL |

## ORDER

Defendant, Foley Industries Inc. ("Foley"), moves for summary judgment on Plaintiff Adam Alley's claim that he was fired for reporting a workplace injury. Doc. 43. Foley claims there is no issue of material fact that precludes summary judgment because a reasonable jury could only find that Alley was fired for timecard fraud. Because a reasonable jury could conclude that Foley fired Alley in retaliation for reporting a workplace injury, Foley's motion is denied.

### I. BACKGROUND

#### A. Factual Background

Alley worked for Foley as a field technician from 2012 until he was terminated in 2018. He had worked for Foley's predecessor since 1998. As a field technician, Alley was responsible for repairing heavy machinery. Doc. 10 (Amended Complaint), ¶ 17.

On February 27, 2018, Alley reported that he felt pain in his left shoulder when he reached for a device from his work truck. Foley investigated to determine if Alley was eligible for workers' compensation. Foley contends that part of that investigation involved recreating Alley's day by looking at his time records. Foley's employees were required to manually enter their time into

BMTS—Foley's timekeeping system.  Foley also had a GPS system in its employees' trucks and cell phones, known as Telogis, that allowed Foley to track employees' movements.

When Foley recreated Alley's day, Foley discovered that Alley had reported washing his work truck from 3:45 to 4:30 pm.  However, Telogis showed that Alley's truck was only stopped at the wash bay from 3:44 to 4:04 pm.  Brandy Buffington, an H.R. employee, investigated and identified 17 additional time keeping discrepancies from February 27, 2018, to March 7, 2018.  On March 13, 2018, Alley's supervisor Tyler Burch, Alley's former supervisor Case Clough, and Buffington called Alley into a meeting to discuss these discrepancies.

After meeting with Alley, Buffington emailed Aaron Smith—Burch's supervisor—and stated there were 2 incidents for which she felt they could prove timecard fraud.  Ex. 101 (Buffington email to Smith), at FEC 286.[1]  The first involved Alley's misreporting of when he washed his truck.  Second, Alley had entered into the BMTS system that he performed a post trip inspection of his truck on March 5.  However, Buffington did not believe Alley had entered an inspection into Telogis for that day.  During the meeting when Alley was pressed on this he stated, "Oh I guess, I didn't I don't know what happened there." Ex. 101 at FEC 297 (Buffington's Notes from March 12, 2018, Meeting).  Alley was suspended pending further investigation.

The next day Alley called Clough to recheck the Telogis records.  Clough noticed that there was now an entry in Telogis made by Ron Adams, an IT employee who often enters late Telogis entries.  The Parties contest whether that entry was made the morning after the meeting or if it had been made previously and overlooked by Burch, Clough, and Buffington.

Additionally, on March 14, 2018, Burch discovered that another employee, Everett Snider, had logged into Alley's truck on Telogis to enter inspections.  The Parties contest whether this was

---

[1] Ex. 100-122 were attached to Docket Entry 47.

an accident or whether Snider was trying to cover for Alley.

On March 16, 2018, Alley terminated Foley and Snider. Foley submitted Alley's workers' compensation claim, and Alley was paid $101,156.63 on that claim.

### B. Procedural Background

Alley alleges that he was fired in retaliation for reporting a workplace injury in violation of Mo. Rev. Stat. § 287.780. *See generally*, Doc. 10 (Amended Complaint). Foley argues that it should be granted summary judgment because the record makes clear Alley was fired for timecard fraud and falsifying documents, not for reporting a workplace injury.

## II. LEGAL STANDARD

"Summary judgment is proper if, after viewing the evidence and drawing all reasonable inferences in the light most favorable to the nonvovant, no genuine issue of material fact exists[,] and the movant is entitled to judgment as a matter of law." *Higgins v. Union Pac. R.R. Co.*, 931 F.3d 664, 669 (8th Cir. 2019) (citation omitted); Fed. R. Civ. P. 56(a). "[A] genuine issue of material fact exists if: (1) there is a dispute of fact; (2) the disputed fact is material to the outcome of the case; and (3) the dispute is genuine, that is, a reasonable jury could return a verdict for either party." *RSBI Aerospace, Inc. v. Affiliated FM Ins. Co.*, 49 F.3d 399, 401 (8th Cir. 1995). While the moving party bears the burden of establishing a lack of any genuine issues of material fact, *Brunsting v. Lutsen Mountains Corp.*, 601 F.3d 813, 820 (8th Cir. 2010) (citation omitted), the party opposing summary judgment "must set forth specific facts showing that there is a genuine issue of material fact for trial." *Thomas v. Corwin*, 483 F.3d 516, 527 (8th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

### III. DISCUSSION

#### A. What Legal Framework Applies

Under Missouri law "[n]o employer or agent shall discharge or discriminate against any employee for exercising any of his or her rights under" Missouri's workers' compensation laws, "when the exercising of such rights is the motivating factor in the discharge or discrimination." Mo. Rev. Stat. § 287.780. Reporting a workplace injury to an employer is one of the employee's rights under Missouri's workers' compensation laws. *See* Mo. Rev. Stat. § 287.127. A motivating factor is one that "actually played a role in the discharge" and had a "determinative influence on the discharge or discrimination." Mo. Rev. Stat. § 287.780. Foley argues it is entitled to summary judgment because Alley has failed to show that his reporting of a workplace injury was the "motivating factor" in Foley's decision to fire him.

Under federal civil rights law, a plaintiff must either provide direct evidence of discrimination or rely on the *McDonnell Douglas* burden shifting framework. *McCullough v. Univ. of Ark. for Med. Scis.,* 559 F.3d 855, 860 (8th Cir. 2009). Under this framework, a plaintiff is required to make a prima facie case that an employee was fired for discriminatory reasons. *Id*. The burden then shifts to the defendant to offer a valid reason for the firing. *Id.* If defendant can do so, then plaintiff is required to offer evidence that shows defendant's proffered reason is a pretext for unlawful discrimination. *Id.*

Alley argues that this framework does not apply to claims under Mo. Rev. Stat. 287.780. Alley points to the fact that in 2017 the Missouri Legislature changed the causation standard from contributing factor to motivating factor for claims brought under the Missouri Human Rights Act and Missouri Workers' Compensation Retaliation Statute. *See* 2017 Mo. SB 43, at 4-5 (2017) (Human Rights Act); 2017 Mo. SB 66, at 26-27 (2017) (Workers' Compensation Retaliation). In these bills, the legislature stated that the *McDonnell Douglas* test applied to claims under the

MHRA but was silent on whether it applied to claims for workers' compensation retaliation. Mo. SB 43, at 17.

Alley argues that since the *McDonnell Douglas* test does not apply, he is not required to show Foley's proffered reason for firing Alley was pretextual. Specifically, he claims if he makes a prima facie case that he was fired for filing a workers' compensation claim, then it is up to the jury to determine whether Alley was fired for reporting a workplace injury or for committing timecard fraud.

The Court need not decide whether the *McDonnell Douglas* framework applies because even under that framework Foley's Motion for Summary Judgment should be denied. Therefore, the Court will apply the *McDonnell Douglas* framework here without deciding whether it is required.

### B. Whether Alley has Made a Prima Facie case that He was Fired Because He Reported a Workplace Injury

Alley argues that a reasonable jury could find he was fired for reporting his workplace injury for the following reasons: (1) Alley was fired 17 days after filing his workers' compensation claim; (2) Alley had received consistently positive reviews from his company; and (3) Foley thought Alley was filing a false workers' compensation claim. The Court considers these points in turn.

#### 1. Temporal Proximity

It is undisputed that Alley was injured and reported his work injury on February 27, 2018. It is undisputed that he was fired 17 days later, on March 16, 2018.

"Although timing alone cannot conclusively establish that an employee was discharged for exercising her" workers' compensation rights, proximity "is a factor to be considered." *St.*

*Lawrence v. Trans World Airlines, Inc.*, 8 S.W.3d 143, 150 (Mo. Ct. App. 1999); *Coleman*, 967 S.W.2d at 648 (citation omitted) (same). The closer in time the firing is to the exercise of the right, the stronger the inference of discrimination is. *Donathan v. Oakley Grain, Inc.*, 861 F.3d 735, 742-43 (8th Cir. 2017) ("[T]emporal proximity generally is of greater inferential weight when time frames are compressed. Whether we consider the time frame in this case to be ten minutes or eight days, it is a meaningful and compressed time frame[.]"). Proximity is also given greater weight when the protected conduct was not done in anticipation of being fired. *Id.* There is no suggestion that Alley reported an injury in anticipation of being fired. The fact that Foley was fired less than three weeks after reporting an injury is evidence that his decision to report an injury was the reason he was fired.

Foley argues this proximity is irrelevant because "the presence of an intervening event undermines any causal inference that a reasonable person might otherwise draw from close timing between reporting an injury and termination." Doc. 50 (Foley's Reply), at 24 (citing *Freeman v. Ace Tel. Ass'n.*, 467 F.3d 695, 697-98 (8th Cir. 2006) and *Plemmons v. Reg'l Elite Airline Services*, No. 2:10-cv-4177, 2011 WL 3924957, at *3 (W.D. Mo. Sept. 7, 2011)).

The Eighth Circuit has repeatedly held that an intervening event can remove the causal inference that comes with temporal proximity. *Freeman*, 467 F.3d at 697-98 (holding that Plaintiff's admission, made after his whistleblower complaint, that he had an inappropriate sexual relationship and embezzled from the company weakened the causal inference provided by the month difference between the filing of the complaint and his firing); *Kiel v. Select Artificial, Inc.*, 169 F.3d 1131, 1136 (8th Cir. 1999) (stating independent event of Plaintiff insulting a superior and engaging in an angry outburst in the presence of coworkers weakened the causal connection that could be inferred from temporal proximity between Plaintiff's complaint and her firing).

However, in those cases there was no material dispute as to whether the intervening event was the real reason for the claimant's firing. *Freeman*, 467 F.3d at 697-98 (Plaintiff admitted to embezzlement and inappropriate relationship and court found no reasonable jury could conclude he was fired for whistleblowing and not his inappropriate relationship); *Kiel*, 169 F.3d at 1136 (undisputed that Plaintiff acted inappropriately after requesting a reasonable accommodation and was therefore fired); *Plemmons*, 2011 WL 3924957, at *3 (undisputed that supervisor believed Plemmons had admitted to searching for pornography on company computer and no reasonable jury could find claimant was fired for talking about unions and not searching for pornography). Here, there is a question of material fact whether Foley believed that Alley committed timecard fraud and whether Foley fired Alley for that reason. *See infra*, Section III.C. Therefore, the evidence of proximity is entitled to greater weight than in the cases cited by Foley.

### 2. Positive Reviews

While the proximity between Alley's injury and his firing is not sufficient by itself to make a submissible case that Alley was fired for reporting a workplace injury, *St. Lawrence*, 8 S.W.3d at 150, this is not Alley's only evidence. He also has a history of satisfactory performance evaluations. These positive reviews are circumstantial evidence that Alley was fired for filing a workers' compensation claim. *See McGaughy v. Laclede Gas Co.*, 604 S.W.3d 730, 752 (Mo. Ct. App. 2020) ("Some examples for circumstantial evidence of causation include good work record prior to the adverse employment action, close temporal proximity between the complaint and the adverse action . . . .") (citing *Soto v. Costco Wholesale Corp.*, 502 S.W.3d 38, 49 (Mo. Ct. App. 2016)); *Reed v. Sale Mem'l Hosp. & Clinic*, 698 S.W.2d 931, 935 (Mo. Ct. App. 1985) ("Other factors to be considered are the proximity in time between the exercise of the right and the time of the firing, coupled with evidence of satisfactory work performance and supervisory evaluations.")

(collecting sources). In the two annual evaluations before Alley was fired, he never received a score below "fully meets expectations" in any area. Ex. 106 (Alley 2017 & 2018 Performance Reviews), at FEC 350-352, 358-363. Alley was rated as "fully meets expectations" in the areas of "Ethics and Safety," where Foley stated Alley "[m]aintains high ethical standards in all dealings" and "[e]ffectively utilizes and protects company physical and financial assets." *Id.* at FEC 350, 358. The 2017 performance evaluation summarized Alley's performance as follows: "Adam fully achieves expectations for a field service technician III. He produces quality work and does a good job meeting the customers['] needs." *Id.* at FEC 355. His 2018 summary says, "Adam does a great job with working with the customer and making sure they are happy. Adam needs to continue to build as many customer relationships as possible so that we can continue to grow our brand and build customer loyalty." *Id.* at FEC 366-67. These reviews are corroborated by the testimony of Buffington that "[n]obody wanted to fire Adam." Ex. 2, at 51:5-12.[2]

A reasonable jury could conclude, given the timing of his termination, and these positive performance reviews, that Alley was fired because he reported a workplace injury. This inference is strengthened because as discussed below, Foley had doubts about whether Alley was injured at work.

### 3. Foley's Doubt that Alley Was Injured at Work

Alley argues that his supervisors doubted whether he was injured at work and fired him rather than litigate whether his workers' compensation claim was valid. Foley responds that there is no evidence that anyone with decision-making power disbelieved Alley's claim. However, the record suggests otherwise.

---

[2] Exhibits 1-22 were attached to docket entry 44.

First, during the investigation into Alley's injury, the draft investigation report was created by a team that included Burch. Ex. 15 (Draft Incident Investigative Report), at FEC 1. Burch is Alley's immediate supervisor, and he played a key role in the decision to fire Alley. *Infra* Section III.C.4. This report noted multiple reasons to doubt that Alley was injured at work. *Id.* at FEC 2 (stating Alley was not at the job site when he claimed to be; questioning if Alley reached for the instrument he claimed injured him; and noting Alley had made a questionable claim in 2016). Tyler Whitworth, who was the head of the investigation team, sent an email stating Alley had filed a "false claim" that should be denied because he was not on the jobsite when he was injured. Ex. 113 (Email from Tyler Whitworth to Tyler Conquest). Foley claims that Whitworth played no role in the decision to fire Alley and this email should be disregarded. But in the email, Whitworth states that the determination that Alley had filed a false claim was made "[t]hrough our incident investigation . . . . " *Id.* As stated above, Burch, who did play a role in the decision to fire Alley, was part of that investigation team. Ex. 15, at FEC 1. Indeed, Whitworth's email states he was assisted in the investigation by Burch. Ex. 113. Lastly, Clough—Alley's former supervisor who also played a key role in the decision to fire Alley—testified that he received his information about Alley's injury from Whitworth. Ex. 120 (Case Clough Deposition), at 18:6-15.

Additionally, Burch and Clough testified that they still had doubts about whether Alley was injured at work. Ex. 121, (Tyler Burch Deposition), at 61-63 (stating Alley's explanation for how he was injured did not make sense); Ex. 120, at 115:6-13 (stating he believed Alley's description of how he was injured "was a stretch"). A reasonable jury could conclude from this evidence that decisionmakers connected with Alley's discharge believed Alley lied about his workplace injury in order to get workers' compensation.

9

Case 2:20-cv-04054-NKL   Document 53   Filed 12/20/21   Page 9 of 17

Foley argues this evidence is irrelevant since the decisionmakers testified that Alley's workers' compensation claim was not on their minds when they decided to fire Alley. Ex. 26 (Burch Deposition Excerpts), at 229:3-8 (stating the injury has nothing to do with Alley's termination); Ex. 24 (Clough Deposition Excerpts),[3] at 174:4-7 ("I didn't know it was a work comp claim or what was going on. It's not even in my realm to think about."). Alley, however, is not required to provide direct evidence—such as a statement from Burch or Clough—that Alley was fired because he was going to file a false workers' compensation claim. *Marzec v. Marsh*, 990 F.2d 393, 395 (8th Cir. 1993) (noting such proof is rare). Rather, Alley may prove his case with circumstantial evidence. *Id.* (citing *U.S. Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 715 (1983)); *Coleman*, 967 S.W.2d at 648 ("Proof that an employee was terminated solely in consequence of his exercise of his rights under the Workers' Compensation Laws is necessarily indirect because the employer is not likely to admit that retaliation was his motive"). Further, it is for a jury to determine the credibility of these witnesses. Just because a witness says something does not mean it is true.

Foley also argues this evidence is irrelevant since Foley submitted Alley's workers' compensation claim to its insurer. However, while Alley's claim ultimately was submitted, a jury could find that at the time Alley was fired, Foley had substantial questions about his claim. *See* Ex. 113.

### C. Whether a Reasonable Jury Could Determine that Foley's Proffered Reason for Alley's Termination was Pretextual, and the Real Reason was Retaliation

As stated above, Foley has presented evidence of a non-retaliatory reason for Alley's termination—that Alley was committing timecard fraud and falsifying documents. Under the

---

[3] Exhibits 23-28 are attached to docket entry 50.

10

Case 2:20-cv-04054-NKL   Document 53   Filed 12/20/21   Page 10 of 17

*McDonnel Douglas* framework the burden then shifts to Alley to present evidence that this reason is pretextual and that the real reason for his termination was reporting a workplace injury. Alley argues the following evidence shows Foley's proffered justification for firing Alley was pretextual: (1) Foley's investigation into the cause of Alley's injury was non-existent; (2) Foley's investigation into Alley's time entries was a sham; (3) Foley treated Alley more harshly than other individuals who committed timecard fraud; (4) Alley did not commit timecard fraud or falsify documents; and (5) none of Foley's employees were willing to admit they fired Alley.[4]

### 1. Incomplete Investigation into the Cause of the Workplace Injury

Alley argues that the investigation into the root cause of his injury was abandoned, and this abandonment shows that Foley only started the investigation to find a pretext to fire him.

After Alley was injured, Foley contends it launched an investigation to determine how Alley was injured and to try to prevent future accidents. Ex. 15, at FEC 1. The only report produced from this investigation states that the cause of the injury, and the way to prevent reoccurrence, are yet to be determined. *Id.* at FEC 2. The report did, however, list multiple reasons not to believe Alley's claim. *Id.* (stating that Alley was not at the job at the time he said he was injured, that he had just completed days of army training, and that he had a previous questionable workers' compensation claim). On March 13, 2018, Tyler Whitworth sent an email stating that the claim should be denied because Alley was not at the worksite at the time he says he was injured. Ex. 113. Burch testified that this email was the end of the root cause investigation. Ex. 121, Burch Depo. at 54:3-10.

---

[4] Because the Court finds that Alley has made a submissible case without considering whether Foley's timecard investigation was a sham or that Alley did not commit timecard fraud, the Court need not address those issues at this time.

Foley does not contest the fact that this investigation was not completed, but rather argues this is irrelevant since what matters is whether Foley thoroughly investigated Alley's timecard fraud before deciding to fire him. However, if Foley began a root cause investigation, ostensibly for the purpose of ensuring the safety of its workers and resolving whether Alley was injured as he reported, but never finished the investigation, a reasonable juror could infer pretext. Why begin an investigation and never finish it if the reasons for the investigation were unrelated to the Alley's termination. It is for a jury to decide whether the objective of the root cause investigation was the safety of Foley's employees and to determine how Alley was injured or it was a justification for conducting a timecard review, knowing that a timecard review may show up irregularities. Clough during the suspension discussion asked: "Should we reprimand AA for doing things that others do." Ex. 111(Buffington Notes). This suggests it was known that timecard irregularities of the type allegedly found in Alley's records were known to have occurred in the records of other employees. *See also* Ex. 104 (Email stating Joshua Butler, another Foley employee, had received counseling for timekeeping issues for several years). Once Alley was fired for timecard irregularities, Foley took no further action to investigate how he was hurt or to ensure there were no safety issues that needed to be addressed. From this evidence and the record before the Court, a reasonable juror could conclude Foley was looking for a reason to fire Alley because of his workers' compensation claim.

### 2. Alley Treated Similarly Situated Employees Differently

Alley argues that Foley treated him differently than other employees who were found to have committed similar violations but did not file workers' compensation claims. Specifically, Alley alleges that another employee, Joshua Butler, was found to have committed the same offense for six years and was not fired.

12

Case 2:20-cv-04054-NKL   Document 53   Filed 12/20/21   Page 12 of 17

"A plaintiff may demonstrate pretext by showing that he was treated less favorably than similarly-situated employees outside of his protected group." *Pope*, 406 F.3d at 1009. However, to establish pretext, Alley must show that he and Butler were similarly situated in all relevant respects including that they were fired by the same decision-maker. *Gardner v. Wal-Mart Stores, Inc.*, 2 F.4th 745, 750 (8th Cir. 2021) (citation omitted).

Alley argues that Joshua Butler was similarly situated to Alley because both Alley and Butler were found to have committed timecard fraud, but Butler was given six years of counseling while Alley was fired immediately. Josh Ingold, Butler's supervisor, wrote an email to Buffington, Matt Gardner, Clough and Smith describing the conversation he had with Butler about his time entries. Ex. 104. In that conversation, Butler agreed his timecard entries were inaccurate and he had entered time for hours that he did not work. *Id.* at FEC 149. Butler stated that Ingold was "out to get him", and Ingold responded that if he, "was trying to fire [Butler] we could have dug into find something long ago." *Id.*

Butler admitted that he understood that he could not work through his break and end work early. Ingold then stated, "[Butler] agreed that we had multiple conversations about this . . . Josh had had these similar concerns addressed on every performance appraisal since 2012." *Id.* at 150. Foley argues that "this" and "these similar concerns" in the previous sentence refer only to Butler's habit of working through breaks and then ending his day early, while Alley argues that they refer to both moving time around and to the earlier part of the conversation regarding Butler's statement that his entries were inaccurate and he had entered time for hours he did not work.

The use of "these concerns" and "this" is ambiguous. A reasonable jury could determine that this email indicates Josh had multiple conversations and six years' worth of performance appraisals regarding what Foley has characterized as timecard fraud before he was fired. This

13

Case 2:20-cv-04054-NKL   Document 53   Filed 12/20/21   Page 13 of 17

inference is strengthened by the fact that Ingold indicates that, if he wanted to, he could have found evidence that Butler had committed a fireable offense by digging around. *Id.* at FEC 149. Thus, a reasonable jury could conclude that Butler was given multiple warnings about his timecard fraud while Alley was fired immediately.

Foley argues that Butler cannot be compared to Alley because they had different supervisors with different standards. It is uncontested that Butler and Alley had different direct supervisors. However, there also is overlap in the decisionmakers who decided to fire Alley and those that oversaw Butler. While Alley's direct supervisor was Burch, Burch testified that a team of people, including himself, Smith and Clough, decided to fire Alley. *See infra,* Section III.C.4. Furthermore, Ingold sent his update on Butler to both Smith and Clough. A reasonable jury could conclude from the fact that the email was sent to both Smith and Clough that Smith and Clough were involved in monitoring Butler's behavior and did not move to immediately fire him when he had previously committed timecard fraud. Therefore, a reasonable jury could conclude that Smith and Clough both oversaw Butler and took part in the decision to fire Alley.

Furthermore, even if Butler and Alley were not similarly situated, this evidence is relevant because it shows lax and uneven enforcement of Foley's timecard policies. When a company's proposed reason for firing an employee is that the employee violated a policy, the fact that the company otherwise has lax or uneven enforcement of that policy is evidence of pretext. *EEOC v. Kohler Co.*, 335 F.3d 766, 774 (8th Cir. 2003) (holding the lax and uneven enforcement of the company policy plaintiff was fired for violating was evidence of pretext); *cf. Henderson v. Ford Motor Co.,* 403 F.3d 1026, 1035–36 (8th Cir. 2005) (stating Defendant had not established the proffered reason was pretextual in part because she had not shown the policy she was fired for violating was unevenly enforced). The fact that a reasonable jury could find another employee

was allowed to commit timecard fraud for years shows that the timecard policy was not evenly enforced.

Additionally, Clough asked during the meeting where Foley decided to suspend Alley, "Should we reprimand AA for doing things that others do. On the other hand, just because others do it doesn't make it alright." Ex. 111 (Buffington Notes). This is further evidence that others at the company had similar timecard irregularities as Alley but were not fired for it. This is evidence that Foley's stated rationale for firing Alley was pretext.

Foley argues that because it fired Joshua Butler and Snider for timecard fraud, that it did not unevenly enforce this policy. At best, this creates a factual dispute, and a reasonable jury could determine based on the above evidence that Foley's enforcement of its timecard policy was lax and uneven.

### 3. Whether Alley Admitted that Foley had a Good Faith Belief that Alley Committed Timecard Fraud

Foley argued for the first time at oral argument that Alley has admitted that Foley had a good faith belief Alley committed timecard fraud when he admitted to some of Foley's Statements of Facts.[5] However, Alley's admission was that certain Foley employees made certain statements in their depositions. Alley did not admit that the statements were true. *E.g.* SOF 50. Thus, Alley was not admitting that the employees actually believed Alley committed timecard fraud.

Furthermore, even if it was established that Foley had an honestly held belief as to timecard fraud, that would not end the inquiry. The question is not whether Foley had an honestly held belief that timecard fraud had occurred. Rather the dispositive question is whether that honestly

---

[5] At oral argument, Foley stated the numbers were 49, 50, 51 and 56; however, counsel also indicated that the numbering was off by one and the argument appears to fit better to SOF 48, 49, 50 and 56.

held belief was what motivated Foley to fire Alley. As discussed throughout this order, there is evidence from which a reasonable jury could conclude that is not the case.

### 4. Foley Could Not Identify the Ultimate Decision-Maker

Alley contends that because no one at Foley is willing to take responsibility for firing Alley, a reasonable juror could find that his workplace injury was the real reason for his termination.

The fact that no one at an employer is willing to accept responsibility for a termination is evidence that the proffered reasoning is pretextual because it is more likely that no one would want to accept responsibility for an illegal retaliatory firing then a decision that was made for legitimate reasons. *Christensen v. Titan Distribution, Inc.*, 481 F.3d 1085, 1095 (8th Cir. 2007) (listing the inability of any of Defendant's employees to accept responsibility as one of the three pieces of evidence that showed Defendant's proffered reason was pretextual); *Chalfant v. Titan Distribution, Inc.*, 475 F.3d 982, 992 (8th Cir. 2007) (same).

First, a reasonable jury could determine that no one at Foley has taken responsibility for the decision to fire Alley. Foley stated in an interrogatory answer that Smith, Clough and Burch "participated in making the decision to discharge" Alley. Ex. 115. Smith testified that Burch was the one who decided to fire Alley. Ex. 116, at 23:16-24:1. Clough stated he was not involved in the decision to fire Alley after participating in the March 13, 2018, meeting where they decided to suspend Alley. Ex. 120, at 82:23-83:12.

Burch testified that there was a group call that included Clough, Smith, Buffington, and Beau where a consensus was formed to fire Alley. Ex. 121, at 160:3-23; 161:15-162:24. Burch testified that he was the junior partner and did not run this meeting. *Id.* at 160:18-23. He also stated that he was asked for his thoughts and a consensus had already formed so he simply went along with the group because he did not want to come off as incompetent. *Id.* at 162:5-17.

However, Burch also said that "[a]t the end of the day I was the one that fired him, but there was a lot of discussion out there. We looked at the evidence and what was going on." *Id.* at 36:22-37:2. Burch was then asked what authority he individually had. He responded by stating, "Everything that we did we did as a team. No one was out of the loop on this." *Id.* at 39:1-5. Thus, while there is evidence indicating that Burch is willing to say it was his decision to fire Alley; there is also evidence from which a reasonable jury could conclude that he was trying to pass the blame for making this decision to the entire group of decision makers. Thus, a reasonable juror could infer that Foley's stated reason for firing Alley was pretextual.[6]

## IV. CONCLUSION

For the reasons discussed above, a reasonable jury could conclude that Foley's proffered justification was pretextual and that the true motivating factor in Foley's decision to fire Alley was Alley's exercise of his rights under the workers' compensation laws. Consequently, Foley's motion for summary judgment is denied.

/s/ Nanette K. Laughrey
NANETTE K. LAUGHREY
United States District Judge

Dated: December 20, 2021
Jefferson City, Missouri

---

[6] Additionally, Burch testified that he agreed to fire Alley because he did not want to seem incompetent not because of his good faith belief that Alley committed timecard fraud. Ex. 121, at 162:7-17.